TANGIER, The (GODDARD v.). See Case No. 5,494.

TANGIER, The (SALMON FALLS MANUF'G CO. v.). See Cases Nos. 12,265–12,-267.

## Case No. 13,745.

### In re TANNER.

[1 Lowell, 215; 15 Pittsb. Leg. J. 244; 2 Ben. 211; 1 N. B. R. 316 (Quarto, 59); 35 How. Pr. 20; 1 Am. Law T. Rep. Bankr. 121.] [1]

District Court, D. Massachusetts. Feb., 1868.

BANKRUPTCY—EXAMINATION OF BANKRUPT—RIGHT TO CONSULT ATTORNEY.

1. A bankrupt under examination has no right to consult with his attorney before answering,

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 1 Am. Law T. Rep. Bankr. 121, contains only a partial report.]

except when the examining magistrate shall see good cause for allowing it.
[Cited in Re Dole, Case No. 3,965. Approved in Re Judson, Id. 7,562.]

2. The attorney may attend, and object to improper questions.

[In the matter of E. P. Tanner, a bankrupt.]

LOWELL, District Judge. The register, by agreement of the parties, has certified to me the question whether a bankrupt, upon his examination under section 26 [of the act of 1867 (14 Stat. 529)], has a right to answer by the mouth of his attorney. The law provides for an examination of the bankrupt in writing as to all matters concerning his trade, dealings, property, &c. It is plain, upon the whole tenor of the section, that the examination may be had before the court or before a register, and that the debtor is to be personally present, and to make answer substantially like a witness, and not merely to have interrogatories filed or propounded after the manner adopted in equity and admiralty in certain cases. Whether the requirement that it shall be in writing, means that the questions shall always be in writing, if required by either party, I do not now decide, but it is not intended that the bankrupt himself, or his attorney, shall write the answers, but merely that the deposition shall be reduced to writing, and signed by the bankrupt.

Since the examination may extend to the bankrupt's whole business life, and may involve large interests of himself and his family, and of other persons who have dealt with him, he should have every proper facility for refreshing his recollection, and for making true and careful answer. He may need to consult books and papers, and sometimes, no doubt, to consult counsel; but it seems to me impossible to lay down any general or peremptory rule of law governing such consultations.

In an early case under the insolvent law of Massachusetts, the supreme court is said to have held that the insolvent is absolutely entitled to this privilege: In re Winsor, 8 Law Rep. 514. The case is very briefly reported, and without reasons given, but it has been accepted and acted upon ever since. The practice which has followed this adjudication has been, as I believe the bar will generally concede, unfavorable to the ascertainment of the truth in these investigations, by reason of the great labor and delay of proceeding in that mode; and there is some reason to believe, that if the question were new, the same court might now decide it differently; for in Peabody v. Harmon, 3 Gray, 113, they refused this privilege to a creditor under examination in support of his debt, and many of the reasons for the decision apply with great force to all examinations; and the rule there laid down, that such matters must be left to the judgment of the examining magistrate, appears to me to be the true one. It is not to be supposed that a register will deny the

bankrupt, or a witness, such reasonable opportunity to see his books, and to consult concerning his rights, as will enable him to answer understandingly, and with all proper reservations. the questions that may be asked him. In England, Lord Chancellor Hardwicke refused to make a peremptory order in a similar case, but recommended that the petitioner (a woman) should be allowed the privilege: Ex parte Parsons, 1 Atk. 204. And see Ex parte Bland, Id. 205. And such appears to have remained the rule of practice there: 1 Christ. Bankr. 385; 1 Mont. & A. Bankr. (2d Ed.) 385. [I do not say that on a motion to commit for not answering, or in some other mode, the judgment of the register might not, in some cases, be received; but that there is no general rule of law to be laid down upon the subject, and that, as a matter of practice, it is highly inconvenient that one should be adopted which should tend to mischievous delay without any corresponding advantage.] [2]

The questions to a bankrupt are usually concerning matters of fact, and in the vast majority of cases, involve nothing requiring advice or consultation; and the presence of counsel, with the right to object to improper questions, and to uphold the rights of the bankrupt in substantially the same manner that he would do if his client were called to the stand as a witness in his own cause in any other court, and with the further reserved right to advise with him concerning his answers, when the register can see cause therefor, meets, as it seems to me, all the requirements of justice in this regard. Certificate to the register accordingly.

---

TANNER (OLNEY v.). See Case No. 10,506.

TANNER (UNITED STATES v.). See Case No. 16,430.

TAPLEY (SNOW v.). See Case No. 13,147.

TAPPAN (BEARDSLEY v.). See Cases Nos. 1,188, 1,189.